THE WILLIAMS LAW GROUP
Andrew Williams, Esq.
Attorney for Plaintiff
6273 Sunset Drive
Suite D3
South Miami, Florida 33143
Telephone: (253) 970-1683
CA Bar No. 310526
Email:  Andrew@TheWilliamsLG.com
Secondary Email: WilliamsLawFlorida@gmail.com

**Attorney for Plaintiff, Lenora Antoinette Stines**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENORA ANTOINETTE STINES, an individual, )<br><br>Plaintiff,<br><br>vs.<br><br>BJC TOURING, INC, a Delaware corporation;<br>BEYONCE KNOWLES-CARTER, an individual;<br>SHAWN CARTER, an individual; and<br>DOES 1 through 100, inclusive<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR<br><br>1.  COPYRIGHT INFRINGEMENT<br><br>2.  RIGHT OF PUBLICITY<br><br>3.  UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

NOW COMES Plaintiff, LENORA ANTOINETTE STINES ("Dr. Stines" or "Plaintiff"), by and through undersigned counsel and hereby files this Complaint and Demand for Jury Trial against Defendants, BJC TOURING, INC. ("BJC"); BEYONCE KNOWLES-CARTER; SHAWN CARTER (collectively, the "CARTERS"); and DOES 1 through 100, inclusive, (all defendants collectively shall be known as, the "DEFENDANTS") and states as follows:

## INTRODUCTION

1.     This is a suit based upon violations of the United States Copyright Act (the "Act") and tort claims. The Plaintiff has specifically plead counts of: Copyright Infringement, Violations of Plaintiff's Right of

Publicity, and/or additionally, or in the alternative, a claim for Unjust Enrichment. Plaintiff, however, may move to amend these counts should additional counts and/or claims against the DEFENDANTS be discovered.

2. Plaintiff is seeking damages in an amount to be proved at trial in excess of Seventy-Five Thousand ($75,000.00), including an award of, costs, and attorney's fees.

### THE PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is an individual, and she was at all relevant times mentioned herein a citizen of the country of Jamaica.

4. Defendant BJC is a Delaware corporation with its principal place of business in the State of California. At all relevant times herein, BJC conducted business in the State of California.

5. Defendant BEYONCE KNOWLES-CARTER (hereinafter "KNOWLES") is an individual, and she was at all relevant times herein, a citizen of Los Angeles, County, California.

6. Defendant SHAWN CARTER (hereinafter "CARTER") is an individual, and he was at all relevant times herein, a citizen of Los Angeles, County, California.

7. The full extent of the facts linking the fictitiously designated Defendants with the cause(s) of actions herein is unknown to PLAINTIFF. Further the true names and capacities, whether individual, corporate, associate, plural or partnership, or otherwise, of Defendants, DOES 1 through 100, inclusive, are unknown to PLAINTIFF. PLAINTIFF therefore sues Defendants by such fictitious names. PLAINTIFF is informed and believes, and thereupon alleges, that each of the Defendants designated herein as a DOE is negligently, wantonly, recklessly, tortuously, intentionally and/or unlawfully responsible in some manner for the events and happenings hereinafter referred to, and negligently, wantonly, recklessly, tortuously, intentionally and/or unlawfully, proximately caused injuries and damages to PLAINTIF, as hereinafter alleged. PLAINTIFF will ask leave of this Court to amend this Complaint to show said Defendants' names and capacities once the same have been ascertained.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because this action arises under an Act of Congress, the United States Copyright Act, the Act.

9.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy of this suit exceeds $75,000.00, exclusive of interest and costs, and it is between citizens of the United States and a citizen of a foreign country.

10.     Venue is proper in this District pursuant to § 1391, in that each of the Defendants resides in Los Angeles County, California.

**GENERAL ALLEGATIONS**

11.     Dr. Stines is 68 years old and she is extremely well respected and highly regarded in the island of Jamaica, and throughout the world for her artistry and wisdom.

12.     Due to her credentials, Dr. Stines was propositioned by the DEFENDANTS in March of 2018 to bring dancers to the set of a visual production that was intended to promote the CARTERS' then, new album, "Everything is Love" (the "Project") and their upcoming tour (the promotional visual production hereinafter shall be referred to as the "Video").

13.     The Video was shot while the DEFENDANTS were in Jamaica, on information and belief, to finish creating promotional material for the Project.

14.     On or around March 20, 2018, Dr. Stines provided numerous dancers for the Video shoot.

15.     In addition to providing the various dancers for the Video, Dr. Stines was also requested by the DEFENDANTS to speak in the Video concerning her thoughts about "love".

16.     Dr. Stines was told by representatives of the DEFENDANTS, who were employees or who carried themselves as agents of the DEFENDANTS, that the DEFENDANTS wished to use her voice, but that her voice would *only* be used in the Video, which was for promotional purposes.

17.     Notwithstanding the fact that Dr. Stines had committed to appearing in the Video roughly a week before the Video shoot, she was not provided with any contract or agreement to read, review, or to sign in advance of the Video shoot.

18.     It was only on the day that Dr. Stines arrived on the set of the Video that representatives on behalf of the DEFENDANTS provided her with an agreement, which they told her she '***must*** sign.'

19.     When Dr. Stines inquired into the terms of the agreement, she was told that the agreement 'was just a standard document that everyone *had* to sign.'  She was then told not to 'worry, because the agreement was only going to be utilized so that her voice could be used in the Video.'

20.     Dr. Stines specifically asked the DEFENDANTS' representatives who demanded that she sign the agreement if she could have time to review the agreement with counsel.  Dr. Stines, however, was explicitly told by the representatives of the DEFENDANTS that she could not review the agreement with counsel and that there was 'not enough time.'

21.     Dr. Stines then asked if she could at least take a picture of the agreement and forward an image of the agreement to counsel in order to receive advice on its contents.  Dr. Stines, who has a son that is a licensed attorney in South Florida, intended to send the agreement to her son to quickly review, so he could advise her, but Dr. Stines was explicitly told that she could not send a picture of the agreement to anyone to review.

22.     The representatives of the DEFENDANTS once again "explained" the agreement to Dr. Stines and she was assured that she had nothing to worry about because her voice would only be used in the Video, which was said to be for promotional purposes.

23.     Later, while on the set of the Video, Dr. Stines proceeded to engage in a dialogue with KNOWLES and another individual who asked Dr. Stines if she could "tell [them] about love" to which Dr. Stines

proceeded to answer using her own words, thoughts and definitions.  At the time that Dr. Stines answered the question she was unaware that she was even being recorded.

24.    As the DEFENDANTS were on their flight leaving Jamaica, CARTER, on information and belief, was listening to various records that were intended to be featured on the Project.

25.    While listening to one of these records, CARTER, on information and belief, indicated that one of the records was missing something.

26.    On information and belief, CARTER then directed an individual (presumably a sound engineer) to add the recording of Dr. Stines' vocals to the record.

27.    After the record was played for CARTER with Dr. Stines' vocals added, CARTER said something to the effect of 'that's it!'

28.    On June 16, 2018, the Project, which was highly acclaimed, was released by the CARTERS for commercial distribution.

29.    To the shock, horror and chagrin of Dr. Stines, the Project featured the unauthorized exploitation of her vocals on a song known as "Black Effect" (the "Recording").

30.    Dr. Stines' horror and chagrin was compounded when she realized that not only were her vocals featured on the Recording and in the Project, but she also discovered that she was not even credited by the DEFENDANTS for providing her vocals.

31.    This discovery left Dr. Stines feeling violated and as if the DEFENDANTS had "artistically raped" her.

32.    Dr. Stines' vocals are featured in the first 60 seconds of the Recording, which is approximately 5 minutes and 13 seconds long, or her vocals are featured in roughly 19.17% of the Recording.

33.    The DEFENDANTS' use of Dr. Stines' vocals in the Recording is, and was, unauthorized and Dr. Stines is therefore entitled to compensation under the Act.

## COUNT I
## COPYRIGHT INFRINGEMENT
(by PLAINTIFF against the DEFENDANTS)

34. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

35. By the DEFENDANTS' actions as alleged above, the DEFENDANTS have infringed and will continue to infringe on Dr. Stines' vocals in violation of Dr. Stines' exclusive rights at least under 17 U.S.C. § 101 *et seq* when the DEFENDANTS never had any authorization or other permission to include Dr. Stines' vocals on the Recording or the Project.

36. Upon information and belief, the DEFENDANTS' infringement of Dr. Stines' vocal copyright has been deliberate, willful, and in utter disregard of Dr. Stines' rights.

37. The "agreement" that Dr. Stines entered into with the DEFENDANTS was unconscionable and it was an adhesion contract and thus the DEFENDANTS cannot rely upon it as a bar to the bringing of this suit.

38. The DEFENDANTS have realized unjust profits, gains and advantages as a proximate result of their infringement, and they will continue realizing unjust profits, gains and advantages as a proximate result of their infringement, as long as such infringement is permitted to continue.

39. As a direct and proximate result of the DEFENDANTS' willful copyright infringement, Dr. Stines has suffered and will continue to suffer, monetary loss and a lack of proper credit.  Dr. Stines is entitled to recover from the DEFENDANTS, in amounts to be determined at trial, the damages she has sustained and will sustain, and any gains, profits and advantages obtained by the DEFENDANTS as a result of the DEFENDANTS' acts of infringement and their use and publication of Dr. Stines' vocals.

40. Dr. Stines is entitled to recover damages from the DEFENDANTS that include attorneys' fees and costs that she has sustained and will sustain, and any gains, profits and advantages obtained by the DEFENDANTS as a result of their actions as have been alleged above.

41. At the present time, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Dr. Stines; however, such will be established according to proof at trial.

42. Dr. Stines is also entitled to recover statutory damages as a result of the DEFENDANTS willful infringement of her vocal copyright under the Act.

### COUNT II
### VIOLATIONS OF PLAINTIFF'S RIGHT OF PUBLICITY UNDER CCP § 3344(a)
(by PLAINTIFF against the DEFENDANTS)

43. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

44. Through the DEFENDANTS' actions as alleged above, the DEFENDANTS have violated Dr. Stines' right to privacy and specifically her right to publicity under California Code of Civil Procedure Section 3344(a) through the DEFENDANTS release of the Recording, which included Dr. Stines' vocals without any authorization or other permission to include Dr. Stines' vocals on the Recording or the Project.

45. Upon information and belief, the DEFENDANTS' violation of Dr. Stines' right of publicity has been deliberate, willful, and in utter disregard of Dr. Stines' rights.

46. The "agreement" that Dr. Stines entered into with the DEFENDANTS was unconscionable and it was an adhesion contract and thus the DEFENDANTS cannot rely upon it as a bar to the bringing of this suit.

47. The DEFENDANTS knowingly and intentionally used Dr. Stines' vocals in the Recording to promote the Project, their tour and to amass substantial wealth and income for themselves.

48. The DEFENDANTS' use of Dr. Stines' vocals was for commercial purposes and it did not occur in connection with any news, public affairs, sports broadcast, or political campaign/commentary.

49. The DEFENDANTS did not have Dr. Stines' consent or authorization to use her vocals for any commercial purpose(s).

50. As a result of the DEFENDANTS' use of Dr. Stines' vocals, Dr. Stines has had her rights of publicity violated and she has been harmed in a physical, emotional and pecuniary manner, and the DEFENDANTS' conduct was a substantial factor in causing Dr. Stines' harm.

51. Dr. Stines is entitled to recover damages from the DEFENDANTS that include attorneys' fees and costs that she has sustained and will sustain, and any gains, profits and advantages obtained by the DEFENDANTS as a result of the actions of the DEFENDANTS as have been alleged above.

52. At the present time, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Dr. Stines; however, such will be established according to proof at trial.

53. Dr. Stines is also entitled to recover statutory damages as a result of the DEFENDANTS willful violations of her right of publicity under CCP § 3344(a).

**COUNT III**
**UNJUST ENRICHMENT**
**(PLAINTIFF against the DEFENDANTS)**

54. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

55. On or about June 16, 2018, the DEFENDANTS released the Project for commercial purposes, which featured the Recording.

56. The Recording included Dr. Stines' vocals for approximately 60 seconds or over 19% of the entire song.

57. By the DEFENDANTS using Dr. Stines' vocals, Dr. Stines conferred a benefit upon the DEFENDANTS.

58. The DEFENDANTS are and were aware of, and had knowledge of, the benefit that they received from Dr. Stines when they released the Project, which featured the Recording encompassing Dr. Stines' vocals.

59. The DEFENDANTS intended to receive financial gain and compensation through their release

of the Project and the Recording and they ultimately did receive financial gain and compensation through sales and streams of the Project and the Recording.

60. Notwithstanding the financial gain and compensation that the DEFENDANTS received through their use of Dr. Stines' vocals on the Project and in the Recording, Dr. Stines has not received *any* financial gain or compensation though the commercial release of the Project or the Recording, and Dr. Stines has not been properly credited with providing her vocals on the Recording.

61. The circumstances are such that it would be inequitable for the DEFENDANTS to retain the benefit that was conferred on them by Dr. Stines, without providing any benefit to Dr. Stines.

**WHEREFORE**, for the reasons set forth herein, PLAINTIFF respectfully requests that this Court award damages in her favor and against the DEFENDANTS and each of them as follows:

a. For general damages to be proven at trial in an amount in excess of $75 thousand dollars;

b. For special damages to be proven at trial in an amount in excess of $75 thousand dollars;

c. For an injunction, declaration, or other mandate that provides Plaintiff with the ability to be properly credited on the Recording as a "writer";

d. For an injunction, declaration, or other mandate that provides Plaintiff with the ability to receive publishing percentages that she is entitled to as a "writer" on the Recording;

e. For an injunction, declaration, or other mandate that orders the DEFENDANTS to direct any and all third-parties whom they control to properly credit Plaintiff as a "writer" on the Recording;

f. For a plaque and any other credit/ancillary benefit that Plaintiff is entitled to;

g. For any prescribed statutory damages;

h. For the costs of this action;

i. For attorney's fees; and

j.   For any other and further legal and equitable relief this Court deems just and proper.

DATED this 16th day of June 2020.

THE WILLIAMS LAW GROUP

_____/s Andrew Williams, Esq._
BY: ANDREW WILLIAMS, ESQ.
California Bar No.: 310526
6273 Sunset Drive, Ste D3
South Miami, Florida 33143
Telephone: (253) 970-1683
Attorney for Plaintiff Lenora Antoinette Stines
E-Service: Andrew@TheWilliamsLG.com
Secondary: WilliamsLawFlorida@gmail.com

## DEMAND FOR JURY TRIAL

Plaintiff LENORA ANTOINETTE STINES, hereby demand a trial by jury for all issues so triable.

DATED this 16th day of June 2020.

THE WILLIAMS LAW GROUP

_____/s Andrew Williams, Esq._

## RESERVATION OF RIGHTS

Plaintiff LENORA ANTOINETTE STINES reserves the right to further amend this Complaint, upon completion of her investigation and discovery, to assert any additional claims for relief against the Defendants or any other parties as may be warranted under the circumstances and as allowed by law. Plaintiff LENORA ANTOINETTE STINES further reserves the right to seek and have punitive damages assessed against the Defendants.

DATED this 16th day of June 2020.

THE WILLIAMS LAW GROUP

_____/s Andrew Williams, Esq._
